IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

KENNETH D. HICE                                                            PLAINTIFF

v.                      Civil No. 2:21-cv-02151-PKH-MEF

KEISHA PHELPS; CLEAVLAND STEWART;
DOCTOR ELKINS; SHERIFF JASON MASSEY;
and INVESTIGATOR HOWARD BATES                      DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action filed *pro se* by Plaintiff, Kenneth D. Hice, under 42 U.S.C. § 1983. Plaintiff names as Defendants Keisha Phelps, Cleavland Stewart, Doctor Elkins, Sheriff Jason Massey, and Investigator Howard Bates.[1] Plaintiff claims all Defendants violated his constitutional rights in their official capacities only. Currently before the Court is Defendants' Motion for Summary Judgment, Statement of Facts, and Brief in Support. (ECF Nos. 40-42). Plaintiff has failed to file a response. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2011), the Honorable P. K. Holmes, III, Senior United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

### I.     BACKGROUND

In 2021, Plaintiff was incarcerated in the Logan County Detention Center ("LCDC") in Paris, Arkansas. He was incarcerated in the LCDC first as a pretrial detainee in early 2021, and then as an inmate after his conviction on July 16, 2021. (ECF No. 7, p. 2).

Plaintiff originally filed his Complaint on September 23, 2021. (ECF No. 1). The Court ordered an Amended Complaint, and Plaintiff filed his Amended Complaint on October 14, 2021.

---

[1] Additional Defendants were named but previously terminated. (ECF Nos. 8, 39)

(ECF No. 7). In his Amended Complaint, Plaintiff made five claims: (1) Defendants Stewart, Phelps, and Dr. Elkins denied Plaintiff medical care by failing to respond to his medical requests; (2) Defendants Phelps and Stewart violated Plaintiff's constitutional rights through the conditions of his confinement with dirty drinking cups, dirty sheets, and bugs; (3) Defendants Phelps and Stewart denied Plaintiff access to the courts; (4) Defendants Phelps, Stewart, and Dr. Elkins[2] denied Plaintiff medical care and improperly dispensed Plaintiff's prescriptions; and (5), Defendants Phelps, Stewart, Massey, and Bates harassed Plaintiff's visitors, withheld his personal property, and denied him commissary funds. (ECF No. 7, pp. 4-10).

Defendants filed their Motion for Summary Judgment, Statement of Facts, and Brief in Support on October 18, 2022. (ECF Nos. 40-42). The Court then directed Plaintiff to respond to Defendants' Motion. (ECF No. 43). The Court specifically instructed Plaintiff that his failure to respond to Defendants' Motion for Summary Judgment would result in the facts set forth by Defendants in their summary judgment papers being deemed admitted by Plaintiff pursuant to Local Rule 56.1(c). *Id*. Plaintiff did not file a response to Defendants' Motion for Summary Judgment. Instead, he filed a Motion to Voluntarily Dismiss his claims without prejudice. (ECF No. 45). Defendants objected to Plaintiff's Motion to Voluntarily Dismiss without prejudice. (ECF No. 46). After due consideration, the Court denied Plaintiff's Motion to Dismiss on May 23, 2023. (ECF No. 49). In this May 23, 2023 Order, the Court advised Plaintiff it would consider Defendants' Motion for Summary Judgment on the merits and provided Plaintiff with an additional 21 days to file a substantive response to the Motion for Summary Judgment. *Id*. Additionally, Plaintiff was again advised that his failure to respond would result in the facts set forth by

---

[2] Defendant Nurse Washington was originally named in this claim as well, but Defendant Washington was previously dismissed. (ECF No. 39).

Defendants in their summary judgment papers being deemed admitted by Plaintiff pursuant to Local Rule 56.1(c).  The Order was not returned as undeliverable mail, but Plaintiff failed to respond.  Accordingly, the facts in this matter are undisputed and set forth herein as presented by Defendants in their Statement of Facts.  *See* Local Rule 56.1; Fed. R. Civ. P. 56(e)(2)-(3).

Defendants make several arguments in their Motion for Summary Judgment and Brief: (1) Defendants Phelps, Stewart and Dr. Elkins did not deny Plaintiff medical care, but instead provided him with consistent medical care, treatment, and all prescribed medication; (2) Defendants Phelps and Stewart did not violate Plaintiff's constitutional rights through his conditions of confinement because no conditions alleged by Plaintiff arose to the standard of objectively and sufficiently serious to result in the denial of the minimal civilized measure of life's necessities; (3) Defendant Phelps and Stewart did not deny Plaintiff access to the courts; (4) Defendants Phelps, Stewart, Massey, and Bates cannot be liable for verbal harassment because such claims do not rise to constitutional violation; (5) Defendant Massey holds Plaintiff's cell phone at the pleasure of the prosecutor and will return it to Plaintiff when released to do so by the prosecutor; (6) all individual claims are barred by qualified immunity;[3] and (7), no official capacity claims were stated.  (ECF No. 24).

Plaintiff was arrested and booked into the LCDC on March 8, 2021.  (ECF No. 41-1, p. 8).  Plaintiff was released from the LCDC upon his transfer to the Arkansas Department of Corrections ("ADC") on October 12, 2021.  (ECF No. 41-1, p. 41).  Plaintiff was convicted on July 16, 2021, while housed in the LCDC.  (ECF No. 7, p. 2).  At all times relevant to Plaintiff's claims Defendant

---

[3] As the Court explains herein, Plaintiff did not plainly assert individual capacity claims against any Defendants, but if he intended to do so he still failed to state cognizable constitutional violation claims against any Defendant in their individual capacity.  Accordingly, no analysis of qualified immunity is necessary here.

Phelps was the jail administrator at the LCDC (ECF No. 41-1, p. 1); Defendant Stewart was a sergeant at the LCDC (ECF No. 41-3, p. 1), Defendant Dr. Elkins was the contract medical provider for the LCDC (ECF No. 41-2, p. 1); Defendant Bates was an investigator for the Logan County Sheriff's Department (ECF No. 41-4, p. 2); and Defendant Massey was the Sheriff of Logan County (ECF No. 41-4, p. 1).

## II.  LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607. "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. at 610. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

4

Under § 1983, a defendant may be sued in either his personal capacity, or in his official capacity, or claims may be stated against a defendant in both his personal and his official capacities. The type of conduct that is actionable and the type of defense available depend on whether the claim is asserted against a defendant in his official or individual capacity. *See Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (internal citations omitted). "Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself." *Id*. Personal capacity claims "are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense" to these individual capacity claims. *Id*. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that the defendant acted under color of state law, and that the actor violated a right, privilege, or immunity secured by the Constitution. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999). The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under Section 1983. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986).

Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). To sustain an official capacity claim against such an entity a plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006). Thus, Plaintiff's official capacity claims against Defendants are "functionally equivalent" to alleging that their employer, Logan County, Arkansas, had "a policy,

5

custom, or [took an] official action" that deprived him of his constitutional rights. *Veatch*, 627 F.3d at 1275; *Johnson*, 452 F.3d at 973.

To establish a claim for "custom" liability, Plaintiff must demonstrate: (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the official of that misconduct; and (3), that Plaintiff was injured by acts pursuant to the government entity's custom, i.e., that the custom was a moving force behind the constitutional violation. *Johnson v. Douglas County Medical Dept.*, 725 F.3d 825, 828 (8th Cir. 2013). "A single deviation from a written, official policy does not prove a conflicting custom." *Id.* (quoting *Jane Doe A v. Special Sch. Dist. of St. Louis*, 901 F.2d 642, 646 (8th Cir. 1990)).

## III.  DISCUSSION

As an initial matter, the Court must address Plaintiff's procedural failures which warrant dismissal of his claims. Plaintiff failed to file a response to Defendants' Motion for Summary Judgment despite multiple chances to do so, and a warning that Defendants' Motion would be decided on the merits even if Plaintiff failed to respond. (ECF No. 49).[4]

---

[4] The Court previously determined it would prejudice Defendants to grant Plaintiff's motion for voluntary dismissal, and advised Plaintiff the Defendants' Motion for Summary Judgment would be considered on the merits. The Court explained that it is within the Court's sound discretion to grant or deny a plaintiff's motion to voluntarily dismiss a lawsuit. *See Beavers v. Bretherick*, 227 F. App'x 518, 520, 2007 WL 1109940 (8th Cir. 2007). In making its decision, the Court should consider the following factors: "(1) whether the plaintiff has presented a proper explanation for the desire to dismiss; (2) whether the defendant has expended considerable effort and expense in preparing for trial; (3) whether the plaintiff exhibited 'excessive delay and lack of diligence' in prosecuting the case; and (4) whether the defendant has filed a motion for summary judgment." *Id.* (citing *Paulucci v. City of Duluth*, 826 F.2d 780, 783 (8th Cir. 1987)). The Eighth Circuit has noted that Rule 41(a)(2) is primarily intended to avoid a voluntary dismissal that would "unfairly affect" the defendant. *See Paulucci*, 826 F.2d. at 782). Here, the Court found that the parties have been litigating this case for well over a year, and Plaintiff did not provide any reason for his

The Court may grant Defendants' Motion for Summary Judgment based on Plaintiff's failure to dispute Defendants' Statement of facts alone. *See Smith v. Armtec Countermeasures Company*, 2016 WL 6661172, *3 (W.D. Ark. Nov. 10, 2016) (explaining a poorly constructed response to summary judgment motion which did not dispute facts failed to comply with Federal Rule of Civil Procedure 56, therefore, the facts submitted by moving party could be accepted as undisputed). Furthermore, "[t]he 'failure to oppose a basis for summary judgment constitutes waiver of that argument,' because the non-moving party is responsible for demonstrating any genuine dispute of material fact that would preclude summary judgment." *Paskert v. Kemna-ASA Auto Plaza, Inc.*, 950 F.3d 535, 540 (8th Cir. 2020) (quoting *Satcher v. Univ. of Ark. at Pine Bluff Bd. Of Trs.,* 558 F.3d 731, 735 (8th Cir. 2009)). As explained in *Paskert*, it is not the Court's responsibility to "sift through the record" to determine if any issues of fact exist. 950 F.3d at 540. While the Court could recommend dismissal based solely on Plaintiff's procedural failures, it will proceed to fully address the merits of the case using the undisputed facts provided by Defendants.

### A. Claims One and Four - Denial of Medical Care and Prescriptions

Plaintiff's Claim One is that Defendants Phelps, Stewart, and Dr. Elkins denied him medical care from September 16, 2021, to October 6, 2021, when they failed to answer his medical requests regarding his dizziness, ears ringing, spotty tunnel vision, and left arm and finger numbness. (ECF No. 7, pp. 4-5). Plaintiff also alleges in Claim Four that these same Defendants denied him medication from March 2021 through June 2021. (ECF No. 7, p. 9).

---

requested dismissal without prejudice. Further, Defendants have expended resources conducting discovery, and filing a Motion for Summary Judgment, Brief in Support, and Statement of Facts. Accordingly, the Court held that Plaintiff was not entitled to a voluntary dismissal without prejudice at this stage. *See Beavers*, 2007 WL 1109940, at *522 (reversing the district court's grant of voluntary dismissal after the defendants filed a motion for summary judgment and remanding with instructions for the district court to rule on the pending motion for summary judgment).

The Eighth Amendment prohibition on cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). To succeed on this type of claim, Plaintiff must demonstrate (1) that he had an objectively serious medical need, and (2) that the Defendants actually knew of, but deliberately disregarded, that serious medical need. *See Ivey v. Audrain Cnty., Mo.*, 968 F.3d 845, 848 (8th Cir. 2020). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) (internal quotations omitted). "To demonstrate that a defendant actually knew of, but deliberately disregarded, a serious medical need, the plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the [inmate's] health." *Barton v. Taber*, 908 F.3d 1119, 1124 (8th Cir. 2018) (internal quotations and citations omitted). The Eighth Circuit has stated that this "onerous standard requires a showing more than negligence, more than even gross negligence, but less than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate." *Thompson v. King*, 730 F.3d 742, 747 (8th Cir. 2013) (internal quotations and citations omitted).

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.*, 557 F.3d 628, 633 (8th Cir. 2009). "A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that these delays adversely affected his prognosis[,]" *Holden v. Hirner*, 663 F.3d 336,

8

342 (8th Cir. 2011) (internal quotations omitted), unless the need for medical attention is obvious to a layperson, in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay. *See Schaub v. VonWald*, 638 F.3d 905, 919 (8th Cir. 2011) (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999)); *Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) (holding a three-week delay, "coupled with knowledge of inmate-patient's suffering, can support a finding of an Eighth Amendment violation").

Defendants argue in their summary judgment papers that there is no evidence Plaintiff was ever denied medical care. Instead, Defendants present summary judgment evidence showing Plaintiff was repeatedly and consistently referred to medical providers who provided medical care and prescriptions for Plaintiff. Defendant Phelps states in her Affidavit:

> I did not deny or delay or interfere with [Plaintiff's] necessary medical care during his detention in the LCDC in 2021. I repeatedly and consistently advised him to make a medical request for any medical issue (instead of grievances to jail staff), which he did on several occasions during his detention. I took action to follow up and address [Plaintiff's] concerns about his medication on numerous occasions, as reflected above and in the grievance records. I followed up to ensure that [Plaintiff's] medical requests were addressed by contract medical staff (and outside providers such as the dentist) . . ." (ECF No. 41-1, p. 3).

Defendant Stewart states in his Affidavit:

> I did not deny or delay or interfere with [Plaintiff's] necessary medical care during his detention in the LCDC in 2021. I advised [Plaintiff] to make a medical request for any medical issue (instead of a grievance to jail staff), which he did on several occasions during his detention. To my knowledge, [Plaintiff] received medical care as needed, including prescription medication packaged by a nurse and dispensed by LCDC staff as prescribed, throughout [Plaintiff's] detention. (ECF No. 41-3, p. 2).

Defendant Dr. Elkins, the contract medical provider for LCDC, states in his affidavit:

> I provided [Plaintiff] with medical treatment, including prescription medication, in accordance with my medical judgment. I freely exercised my medical judgment regarding the course of treatment for [Plaintiff]. I did not deny [Plaintiff] medical treatment that I believed to be necessary within my medical judgment. (ECF No. 41-2, p. 3).

9

Defendant Dr. Elkins also testified in his Affidavit that he responded to each of Plaintiff's medical requests submitted. *Id*. at 1. He prescribed Plaintiff with a prescription for Tamsulosin, a medication for his prostate related complaints. *Id*. In March 2022, Plaintiff submitted a medical request regarding a leg injury and Defendant Dr. Elkins evaluated Plaintiff, diagnosed him with a pulled hamstring, and prescribed him steroids, and muscle relaxers. *Id*. at 2. Defendant Dr. Elkins also prescribed and maintained Plaintiff's prescription for naproxen throughout his incarceration at the LCDC. *Id*.

In response to Plaintiff's April 2021 request stating he was not receiving his prescriptions, Defendant Dr. Elkins checked the status of Plaintiff's prescriptions and confirmed he was receiving both his prostate medication and naproxen daily. These were the only prescriptions Plaintiff had at that time. *Id*.

In response to Plaintiff's April 2021 medical request stating his prostate medication was not working, Defendant Dr. Elkins explained to Plaintiff the Tamsulosin prescribed was a generic version of the medication Plaintiff took prior to his incarceration. After this conversation, Plaintiff was satisfied with his prescription of Tamsulosin.

Attached to Defendant Dr. Elkin's Affidavit is the medical request regarding the incident which Plaintiff specifically complains of in his Amended Complaint. This request is dated September 16, 2021. Plaintiff writes: "I had an episode today where I had tunnel vision, and spotted vision, I was light headed and dizzy, felt a little like throwing up, and my fingers on my left hand were numb, and tingling. Afterwards my energy was spent." Defendant Dr. Elkins wrote on the request "will monitor." (ECF No. 41-2, p. 10).

Based on the summary judgment evidence it does not appear Plaintiff was denied any medical care or prescriptions. Further, there is no summary judgment evidence of deliberate

indifference to Plaintiff's medical needs. Plaintiff was evaluated and prescribed medication when he complained of his leg injury; he was monitored after his September 16, 2021, episode of dizziness; and he was prescribed medication which Defendant Dr. Elkins states he received regarding pre-existing conditions with his prostate. Accordingly, Plaintiff's Claims One and Four fail as a matter of law and should be dismissed with prejudice.

### B. Claim Two - Conditions of Confinement

Plaintiff's Claim Two is that Defendants Phelps and Stewart violated his Eighth and Fourteenth Amendment rights with the conditions of his confinement. Specifically, Plaintiff complains of dirty drinking classes with tea stains in them; dirty bed sheets for over three weeks; and the presences of wasps, spiders, and other bugs in LCDC. (ECF No. 7, pp. 6-7). Plaintiff states these violations occurred from September 3, 2021, through September 22, 2021. *Id*. at 6.

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998) (internal citation and quotations omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The Eighth Circuit has made clear that a prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal

civilized measure of life's necessities. The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." *Revels*, 382 F.3d at 875 (citations and internal quotation omitted). Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Id*. The Eighth Circuit has also consistently held "mere negligence or inadvertence does not rise to the level of deliberate indifference." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017) (citing *Schaub v. VonWald*, 638 F.3d 905, 914-15 (8th Cir. 2011) ("Deliberate indifference is equivalent to criminal-law recklessness, which is more blameworthy than negligence, yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate.") (internal quotations omitted)).

Defendants argue none of Plaintiff's allegations rise to the necessary objective level to state a constitutional violation as he was not denied the minimal civilized measure of life's necessities. Further, the summary judgment record indicates Defendant Phelps was not deliberately indifferent to Plaintiff's health and safety as she investigated and addressed all of Plaintiff's complained of conditions. Defendant Phelps states in her affidavit:

> Tea is made fresh each day. All dishes and dishware, including cups, are washed after each use in an industrial dishwasher that sanitizes the load. When [Plaintiff] submitted grievances about stained cups . . . I went to the cooks and talked with them to confirm that they were washing cups correctly, which they were. The cooks confirmed that a few of the cups were stained by tea but they were washed correctly. After seeing that the dishwasher did not fully remove the stains (though it did sanitize the cups), I instructed the cooks to soak the stained cups and hand-scrub them to get the stains removed, and we have been doing this ever since, with any tea-stained cups.
>
> Clean linens are provided weekly to LCDC detainees—to the front half of the jail on Wednesdays, and the back half of the jail on Saturdays. Additionally, inmates may put their linens in their laundry bag to go out at night and be cleaned, every other night.

> At all times during [Plaintiff's] detention . . . we had an exterminator who visited the jail at least quarterly and also visited if we called between scheduled visits, to spray and treat the jail for bugs and pests. The exterminator treats inside the jail. The yard is open to the outdoors—we cannot stop wasps and spiders and ants from getting in the yard but if inmates alert us about a particular pest in the yard, LCDC staff will spray the yard for them—in addition to the services provided by the exterminator inside the jail. (ECF No. 41-1, p. 4).

Based on the summary judgment record, it is clear Plaintiff did have access to clean sheets on a regular basis, and pest control was regularly provided at the LCDC. Accordingly, Plaintiff has failed to state Eighth Amendment violations regarding these two allegations. Further, the stained cup issue, while unrelated to the sanitation of the cups, was addressed by Defendant Phelps once she was notified of the issue. Defendant Phelps' response and remedy of the stained cup issue shows she was not deliberately indifferent to Plaintiff's health and safety. Accordingly, Plaintiff's Claim Two has failed as a matter of law and should be dismissed with prejudice.

### C. Claim Three - Denial of Access to Courts

In Claim Three, Plaintiff alleges he was denied access to the courts on March 8, 2021, through October 3, 2021, by Defendants Phelps and Stewart. (ECF No. 7, p. 7). Specifically, Plaintiff alleges:

> I have asked for help trying to do legal work on my own with no [l]aw [l]ibrary, and was denied everything [I] ask for help with [l]egal mater. Ended up having to hire a [l]awyer I couldn't afford. Keisha Phelps denied me everything [I] asked to try and take care of [l]egal maters. Self and [f]amily had to suffer [financial hardship] plus [I] ended up with A.D.C. time when [I] had a witness no one contacted that would have cleared me of one of my charges in which [probably] would have prevented A.D.C. time. Plus filing suits is extremely difficult! (ECF No. 7, p. 8) (errors in original).

Defendants argue Plaintiff has failed to state a cognizable claim for denial of access to the courts based on his allegation that the facility did not maintain a law library. The Supreme Court previously held "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing

13

prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). Nevertheless, *Bounds* "did not create an abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Instead, prison officials must provide inmates with "meaningful access to the courts," *Bounds*, 430 U.S. at 824, and providing a law library is merely one way to comply with this obligation. *See Bear v. Fayram*, 650 F.3d 1120, 1123 (8th Cir. 2011) (the constitutional requirement of access to the courts may be satisfied in several ways including, prison libraries, jailhouse lawyers, private lawyers on contract with the prison, or some combination of these and other methods).

An inmate has no standing to pursue an access claim unless he can demonstrate he suffered prejudice or actual injury resulting from the prison officials' conduct. *See Lewis*, 518 U.S. at 351-52; *see also Farver v. Vilches*, 155 F.3d 978, 979-80 (8th Cir. 1998) (per curiam); *Klinger v. Dep't of Corr.*, 107 F.3d 609, 617 (8th Cir. 1997) (to prevail on access-to-courts claim, inmate must show actual injury or prejudice even if denial of access to library is complete and systematic); *McMaster v. Pung*, 984 F.2d 948, 953 (8th Cir. 1993). "To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim.'" *Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008) (citations omitted).

Defendant Phelps states in her Affidavit that the LCDC provides law library services to LCDC inmates through an online law library on a tablet. That service was disrupted for approximately three weeks during Plaintiff's incarceration at the LCDC but was then restored. (ECF No. 41-1, p. 3). There is no evidence on the summary judgment record showing how the

three-week disruption in the online law library frustrated Plaintiff's ability to file a meritorious claim challenging his sentence or conditions of confinement. Instead, Plaintiff makes only general allegations that Defendant Phelps would not help him with his legal matters. Additionally, the only injuries claimed by Plaintiff seem to be related to the expense of hiring a criminal defense attorney and his dissatisfaction with that attorney. Expenses of personal representation and ineffective assistance of counsel do not establish injury for the purposes of an access to courts claim. *See White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007) (explaining to prove an actual injury an inmate must demonstrate his non-frivolous legal claim was frustrated or impeded). Further, Plaintiff has not asserted any specific actions by either Defendant Phelps or Stewart that caused his alleged injury. Accordingly, Plaintiff's Claim Three for denial of access to courts fails as a matter of law and should be dismissed with prejudice.

### D. Claim Five – Harassment, Commissary, and Property Seizure

In his Claim Five, Plaintiff alleges Defendants Phelps, Cleveland, Stewart, Massey, and Bates all harassed Plaintiff and Plaintiff's family and visitors. Plaintiff also claims he is being harassed by these Defendants regarding his commissary and personal property. Specifically, Plaintiff claims any money brought to the LCDC for him was not appropriately applied to his commissary account, his visitors were harassed, and his cell phone is being improperly withheld from his family. (ECF No. 7, p. 10).

#### 1. Harassment

Defendants argue they did not harass Plaintiff or his family, but even if they did, verbal harassment does not rise to the level of a connotational violation, Plaintiff has not been denied visitation, and Defendants are not withholding his phone from his family. Additionally,

Defendants argue Defendants Bates and Massey were not personally involved in any of the actions complained of by Plaintiff.

First, the Court will address Defendant Bates and Massey's lack of personal involvement in the complained of conduct. A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell v. Department of Social Servs.*, 436 U.S. 654, 694 (1978). "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994); *see also Whitson v. Stone County Jail*, 602 F.3d 920, 928 (8th Cir. 2010) ("In a § 1983 case, an official is only liable for his own misconduct and is not accountable for the misdeeds of his agents under a theory such as respondeat superior or supervisor liability") (internal quotations omitted); *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability").

"Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (quoting *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir.2006)).

The summary judgment record here indicates Defendant Bates had no personal involvement in Plaintiff's arrest, seizure of his personal property, or detention in the LCDC. (ECF No. 41-4, p. 2). Also, Defendant Massey, as Sheriff, has supervisory and policy authority over the LCDC and LCDC staff, but he did not directly or personally participate in any of the conduct complained of by Plaintiff. (ECF No. 41-4, p. 2). Accordingly, all claims against Defendants

Bates and Massey fail as a matter of law because neither was personally involved in the conduct Plaintiff complained of.

Next, the Court addresses Plaintiff's claims of harassment regarding his visitors and visitation time at the LCDC. Defendant Phelps testified in her affidavit she never interacted with Plaintiff's family or visitors. The LCDC logs indicate Plaintiff was permitted numerous visits under LCDC policy and none of his scheduled visits were canceled by the LCDC staff. (ECF No. 41-1, p. 5). Plaintiff's wife was arrested at one of her visits to Plaintiff on an active warrant, but she was permitted to visit with Plaintiff prior to being taken into custody. This arrest was not an attempt to harass Plaintiff or his wife. *Id*.

Defendant Stewart testified in his Affidavit that Plaintiff's wife visited Plaintiff on numerous occasions and none of Plaintiff's visits were canceled by LCDC staff. (ECF No. 41-2, p. 2). The Plaintiff was, however, infuriated by the arrest of his wife and threatened Defendant Stewart related to this incident. *Id*.

"Verbal threats do not constitute a constitutional violation." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985). Similarly, taunts, name calling, and the use of offensive language does not state a claim of constitutional dimension. *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (inmate's claims of general harassment and of verbal harassment were not actionable under Section 1983); *O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987) (verbal threats and abuse by jail officials did not rise to the level of a constitutional violation). Even if taken as true, claims based on verbal threats and harassment necessarily fail because they are not cognizable under Section 1983. Thus, Plaintiff's claims that Defendants Phelps and Stewart harassed him and his visitors at the LCDC fail to state a plausible constitutional violation.

### 2. Commissary Account

Plaintiff's claims regarding his commissary account also fail as a matter of law because inmates have no constitutional right to purchase items from a commissary. *See Amos v. Stolzer*, 2014 WL 6473596, *9 (E.D. Mo. Nov. 18, 2014). Further, if Plaintiff is attempting to allege his monies from his account were misappropriated, then he has an adequate post-deprivation remedy to regain his property. *See Elliot v. Hurst*, 307 Ark. 134, 817 S.W.2d 877, 880 (1991) (cause of action of conversion lies where a distinct act of dominion is exerted over property in denial of owner's right). Therefore, Plaintiff's allegations do not rise to the level of a constitutional violation. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (intentional deprivation of property does not violate due process when meaningful post-deprivation remedy is available); *Barnett v. Centoni*, 31 F.3d 813 (9th Cir. 1994) (negligent or intentional deprivation of prisoner's property fails to state a claim under Section 1983 if state had adequate post-deprivation remedy). If Plaintiff is claiming theft of his commissary account money, then he can seek redress in Arkansas state court for his claim.

### 3. Personal Property Seizure

Finally, the summary judgment record indicates Plaintiff's cell phone was seized during his arrest as evidence. Defendant Massey testified in his Affidavit that Plaintiff's cell phone was evidence seized during his arrest, but all other items of personal property that were not evidence were delivered to the LCDC at Plaintiff's booking. Plaintiff's cell phone is held in the evidence room by the Logan County prosecutor, not at the LCDC. Plaintiff can request the return of his cell phone, once his criminal case is closed, from the prosecuting attorney of Logan County. If the prosecutor approves the release of Plaintiff's phone, then the Sheriff's Office can release Plaintiff's phone. (ECF No. 41-4, p. 2). As explained above, Defendants cannot be held liable for actions

they did not commit or hold no authority over. *See Clemmons*, 477 F.3d at 967. Accordingly, any claims related to Plaintiff's cell phone fail as a matter of law against these Defendants.

### E. Official Capacity Claims

Plaintiff brought his claims against the Defendants in their official capacities only. (ECF No. 7). Plaintiff failed, however, to list any policies, procedures, or customs of Logan County that allegedly caused his constitutional violations. Based on this omission, Defendants first analyzed the claims as individual capacity claims in their Summary Judgment Motion and Brief – apparently assuming Plaintiff intended to assert individual claims as well as official capacity claims. (ECF No. 42). The Court makes the same assumption, but now must analyze the claims made by Plaintiff – official capacity claims.

Plaintiff alleges each of his claims against the Defendants in their official capacity only. Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In this case, Plaintiff's official capacity claims against Defendants are treated as claims against Logan County, Arkansas. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Logan County's liability under Section 1983, "[P]laintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). Here, this means Plaintiff must produce summary judgment evidence to show a policy or custom of Logan County contributed to his claimed constitutional violations.

The summary judgment record is devoid of any alleged policies, procedures, or customs of Logan County which caused the violations alleged by Plaintiff. Accordingly, Plaintiff's official capacity claims against all Defendants fail as a matter of law.

## IV.   CONCLUSION

For the reasons stated above, it is recommended that Defendants' Motion for Summary Judgment (ECF No. 40) be **GRANTED** and all claims against all Defendants be **DISMISSED WITH PREJUDICE**.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 20th day of July 2023.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE